IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL UPTON KERSHAW,

          Petitioner,               No. CIV S-06-1430 FCD GGH P

    vs.

MIKE EVANS, Warden, et al.,        ORDER &

          Respondents.         FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Petitioner, a state prisoner proceeding through counsel, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction in 2000 in Sacramento County Superior Court on three counts of lewd and lascivious acts on a child under fourteen, per Cal. Penal Code § 288(a), for which he was sentenced to a state prison term of 105 years to life.[1] Petition, p. 7. Petitioner raises the following grounds, specifically contending that the California Supreme Court's decision denying each ground was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the

---

[1] Petitioner's sentence was enhanced, under Cal. Penal Code §§ 667(a) & (d) and 667.71, a prior conviction, pursuant to Cal. Penal Code § 288(b), having been found true. Petition, p. 24; Respondent's Lodged Document 1, Third Appellate District Opinion, p. 1, n. 2.

United States Supreme Court: 1) ineffective assistance of counsel; 2) right to due process denied by state evidentiary errors amounting to a deprivation of due process; 3) trial court failed in its duty to explain legal issues in response to a specific jury inquiry.

Pending before the court is respondent's motion to dismiss the petition as barred by the one-year AEDPA statute of limitations.  Respondent noticed the motion for hearing on December 7, 2006, at 10:00 a.m. before the undersigned.  Paul O'Connor appeared for respondent; Chad Johnson represented petitioner.  Although petitioner did not file timely written opposition and, therefore, was not entitled to be heard at the hearing on respondent's motion, per Local Rule 78-230(c), which respondent argued, the court, in light of, inter alia, petitioner's probable opportunity to raise his opposition on the merits in objections to findings and recommendations, permitted oral argument on the merits, afterward directing petitioner to file written opposition, setting forth a factual basis for a claim of equitable tolling, within ten days of the hearing, after which respondent was granted an opportunity to reply, the matter thereafter to be deemed submitted.  Petitioner filed written opposition on December 15, 2006, to which respondent filed a reply on December 21, 2006.

<u>Motion to Dismiss</u>

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

On January 10, 2002, the California Court of Appeal affirmed petitioner's conviction.  Motion to Dismiss (MTD) p. 3, Respondent's Lodged Document No. 1.  Petitioner sought review in the state supreme court, on February 22, 2002, which was denied on March 27, 2002.  Id., Lodged Document Nos. 2 & 3.  Petitioner did not file a petition for writ of certiorari, but did file two subsequent state court habeas petitions: the first petition was filed in state superior court on March 21, 2003, and denied on November 21, 2003.  MTD, pp. 3-4, Lodged Document Nos. 4 & 5.  Petitioner filed his second habeas petition in the state supreme court on October 7, 2004, which was denied on March 22, 2006.  Id., at 4, Lodged Document Nos. 6 & 7.

As respondent sets forth (MTD, p. 4), petitioner's conviction became final on June 25, 2002, ninety days after the state supreme court denied his petition for review on direct appeal on March 27, 2002.   Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("holding that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [ninety-day] period within which a petitioner can file a petition for a writ of certiorari with the United States Supreme Court, whether or not the petitioner actually files such a petition.")  The statute of limitations began to run the day after the date of final conviction/judgment, on June 26, 2002.  Patterson v. Stewart, 252 F.3d 1243, 1246 (9th Cir. 2001).  Therefore, petitioner had until June 25, 2003, to file a timely federal petition.  The instant petition, filed June 27, 2006, is untimely absent any applicable tolling.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  Respondent concedes that under § 2244(d), petitioner is entitled to tolling from the filing date of the first state

1  court habeas petition, in superior court, on March 21, 2003, until the date of denial on November

2  21, 2003.  However, the second state habeas petition was not filed in the state supreme court until

3  October 7, 2004, more than ten months later.

4         In Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134 (2002), the United States

5  Supreme Court found that habeas petitioners are entitled to tolling of the limitations period under

6  28 U.S.C. § 2244(d)(2) between the period of time after which a habeas petition is denied at a

7  lower level and then filed at a higher one to the extent that petitioner seeks higher court review of

8  the lower court's decision.  As respondent observes (MTD, p. 5), the U.S. Supreme Court has

9  recently held that a petitioner is entitled to interval tolling only for petitions that were timely filed

10 under state law.  Evans v. Chavis, 546 U.S. 189, 126 S. Ct. 846, 849 (2006).

11        In most states, a statute sets forth a time period, such as 30 or 60 days, for the

12 filing of a timely appeal.  Chavis, supra, 546 U.S. 189, 126 S. Ct. at 849.  Under California law,

13 the notice of appeal is timely if filed within a "reasonable time."  Id., 126 S. Ct. at 849 (citing In

14 re Harris, 5 Cal. 4th 813, 828 n. 7, 21 Cal. Rptr. 2d 373 (1993)).  In the absence of a clear

15 indication by the California Supreme Court that a petition is untimely, "the [federal court] must

16 itself examine the delay in each case and determine what the state courts would have held in

17 respect to timeliness."  Chavis, supra, 546 U.S. 189, 126 S. Ct. at 852.  The Supreme Court also

18 stated that even if a state court denies a habeas on the merits, this does not prove that the state

19 court thought the petition was timely.  Id., 126 S. Ct. at 850.  In Chavis, the Supreme Court found

20 no authority suggesting that the California State Supreme Court would find an unexplained delay

21 of six months to be unreasonable.  546 U.S. 189, 126 S. Ct. at 854.

22        As no timely opposition was filed, the only argument for timeliness under the

23 AEDPA statute by petitioner is set forth on page 10 of the memorandum in support of the

24 petition.  Therein, petitioner largely relies on the reasoning of the Ninth Circuit in Chavis v.

25 LeMarque, 382 F.3d 921, 926 (9th Cir. 2004), that a California Supreme Court petition denial,

26 which petitioner herein received, that is without comment or citation is a denial on the merits and

1   is, therefore, not untimely – reasoning, which, of course, has been subsequently explicitly

2   reversed by Chavis, supra, 546 U.S. 189, 126 S. Ct. 846.

3             This court finds, as indicated at the hearing on this motion, that petitioner is not

4   entitled to statutory tolling for the ten-month interval between the denial of petitioner's initial

5   state court petition and the filing of the second state habeas petitions because the filing of the

6   second state court petition was not within "a reasonable time" within the meaning of the U.S.

7   Supreme Court's decision in Chavis.  This being the case, the AEDPA statutory limitations

8   period for filing in this court ran, as respondent notes (MTD, p. 7), as of February 2004, because

9   by the time of the filing of the initial state court habeas, on March 21, 2003, 268 days of the 365-

10  day limitation period elapsed, and following the November 21, 2003 denial, an additional 320

11  days passed by the time of the filing of the October 7, 2004, petition.  The statute ran as of

12  February 26, 2004, and the filing of the state supreme court petition, in October, 2004, did not

13  restart the clock.   Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).  Thus, absent equitable

14  tolling, the instant petition, filed in June of 2006, is untimely by more than two years.

15        *Equitable Tolling*

16            In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997),

17  overruled on other grounds, Calderon v. U. S. District Court (Kelly), 163 F.3d 530 (9th Cir.

18  1998), itself abrogated by Woodford v. Garceau, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth

19  Circuit found that the statute of limitations could be equitably tolled if extraordinary

20  circumstances beyond a prisoner's control made it impossible to file the petition on time.   "In

21  addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the

22  failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller, 304

23  F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

24            Equitable tolling will not be available in most cases because tolling should only

25  be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him

26  to file a petition on time.  Beeler, 128 F.3d at 1288-89.  As held in Beeler, "[w]e have no doubt

that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289. "Mere excusable neglect" is insufficient as an extraordinary circumstance. Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998). Moreover, ignorance of the law does not constitute such extraordinary circumstances. See Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986).

In the Calderon (Beeler) case, the Court of Appeals held that the district court properly found equitable tolling to allow Beeler more time to file his petition. Beeler's lead counsel withdrew after accepting employment in another state, and much of the work he left behind was not useable by replacement counsel – a turn of events over which the court found Beeler had no control. The Court of Appeals held that the district court properly found these were "extraordinary circumstances" sufficient to toll the statute of limitations.[2]

The Ninth Circuit also found extraordinary circumstances in Calderon v. U.S. Dist. Ct. For Cent. Dist. Of Ca. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc). The three reasons given which independently justified tolling were: a district court stay which prevented petitioner's counsel from filing a habeas petition, mental incompetency until a reasonable time after the court makes a competency determination, and the fact that petitioner did at one time have timely habeas proceedings pending which were mistakenly dismissed, not as a result of any doing by petitioner. Id. at 541-42. See also Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (clerk's unjustified rejection of a petition justified partial tolling); Miles v. Prunty, 187 F.3d at 1107 (delay by prison in withdrawing funds from prisoner's trust account, preparing and mailing filing fee were circumstances beyond his control, qualifying him for equitable tolling); Stillman v. Lamarque, 319 F.3d 1199, 1202-03 (9th Cir. 2003) (equitable tolling permitted where litigation

---

[2]  See also Baskin v. United States, 998 F. Supp. 188 (D. Conn. 1998), wherein the court applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition for certiorari until thirteen months after the denial was entered.

1    coordinator broke a promise to petitioner's counsel to return a signed petition for timely filing);

2    Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (sufficiently egregious misconduct by counsel,

3    such as wholly deficient performance, may justify equitable tolling).

4            Conversely, in U.S. v. Van Poyck, 980 F. Supp. 1108, 1110-11(C.D. Cal. 1997),

5    the court found that a petitioner's circumstances were not extraordinary in the following

6    circumstances: inability to obtain transcripts from court reporters, and general prison lockdowns

7    preventing the prisoner's access to the library and a typewriter which were necessary to his

8    motion.  See also Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (counsel's miscalculation

9    of limitations period "and his negligence in general do not constitute extraordinary circumstances

10   sufficient to warrant equitable tolling"; Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988)

11   (reliance on incompetence of jailhouse lawyer not sufficient to justify cause to excuse procedural

12   default); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did

13   not toll statute); Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal

14   expertise does not qualify prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d

15   650, 656 (N.D. Tex. 1998) (same); Fadayiro v. United States, 30 F.Supp.2d 772, 779-80 (D.N.J.

16   1998) (delay in receipt of transcripts does not justify equitable tolling).

17           "Generally, a litigant seeking equitable tolling bears the burden of establishing

18   two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

19   circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418, 12 S. Ct. 1807, 1814

20   (2005); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (a habeas petitioner bears the

21   burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition).

22   "Equitable tolling is unavailable in most cases," and is only appropriate "if *extraordinary*

23   circumstances beyond a prisoner's control make it impossible to file a petition on time."

24   Miranda, supra, at 1066 (internal quotations/citations omitted [emphasis added in Miranda]).  A

25   petitioner must reach a "very high" threshold "to trigger equitable tolling [under AEDPA]...lest

26   the exceptions swallow the rule."  Id.

*Discussion*

Petitioner contends that he is entitled to equitable tolling for the (ten-month) period between the denial of the superior court habeas petition denial and the filing of the habeas petition to the state supreme court because of the circumstances of his prior habeas counsel.[3]

Averring that Richard Dangler was retained, on January 4, 2003, for the purpose of filing all of petitioner's state court habeas petitions, petitioner notes that it was Mr. Dangler who filed the initial lower state court petition on March 21, 2003, which was denied on November 21, 2003.[4]  Opposition (Opp.), p. 2.  During the period following this denial, according to petitioner, petitioner sent Mr. Dangler letters with regard to what additional issues and evidence should be considered for inclusion in the next petition, dated February 29, 2004, April 6, 2004, April 8, 2004, May 9, 2004 and June 31, 2004 [sic].[5]  Id.  Unwilling to include the letters to protect privileged information, petitioner submitted the declaration of C. Roman Rector, who filed petitioner's state supreme court habeas petition, attesting to the existence of the letters, which petitioner contends demonstrates his active participation in the preparation of the next state court petition to be filed.  Id.

In his declaration, C. Roman Rector, managing partner of Rector and Tosney, LLP, currently representing petitioner, declares that in the early months of 2004, Richard Dangler suffered recurring health problems, impairing his ability to continue his criminal practice; also affecting his California practice were issues he began to experience with the California State Bar. Declaration of C. Roman Rector (hereafter, Rector Dec.), ¶¶ 2, 5.  During this period, Mr. Rector

---

[3]  Because, as noted, 268 days of the 365-day limitations period had run by the time of the filing of the initial state court petition, on March 21, 2003, equitable tolling until the filing of the state supreme court petition on October 7, 2004, would mean that there were still 97 days to run on the limitations period following the state supreme court denial on March 22, 2006, rendering this June 27, 2006, petition timely.

[4]  Petitioner erroneously states that the date of the superior court denial was March 22, 2006.

[5]  June, of course, has only thirty days.

8

1  agreed to substitute into several of Mr. Dangler's cases and, on June 11, 2004, Mr. Dangler sent

2  petitioner a letter explaining his health issues and offering Mr. Rector's substitution, which

3  petitioner signed in consent, on June 17, 2004, and returned.  Rector Dec., ¶¶ 5, 6.  Petitioner's

4  counsel avers that he has attached a true and correct copy of that letter.  Rector Dec., ¶ 6, and

5  June 11, 2004 Dangler letter attachment.

6          Following petitioner's June 17, 2004, agreement to the substitution, Mr. Rector

7  states that he spent significant time becoming familiar with the issues of the case; had several

8  phone conversations with petitioner and petitioner's family; and attempted to have a personal

9  visit with petitioner but was not able to be cleared and scheduled for a visit until December 15,

10  2004.  Rector Dec., ¶ 7.  Counsel maintains that petitioner actively participated in the case and

11  references letters with the five dates set forth earlier in counsel's possession.  Id., ¶ 8.

12          According to Mr. Rector, Mr. Dangler was ineligible to practice law in California

13  as of June 30, 2004, and resigned as a member of the California Bar on August 3, 2004;[6] counsel

14  does not know his current location, but was informed that Mr. Dangler had left the country and

15  that the State Bar has his current address as located in Bermuda.  Rector Dec., ¶ 8, attached copy

16  of California State Bar printout of Mr. Dangler's status from the Bar's website.

17          In Mr. Rector's professional opinion, the three and one/half months it took for

18  him to prepare and file petitioner's writ to the state supreme court were necessary for a

19  comprehensive knowledge of this issues, noting that his correspondence with his client was

20  through the mail and on the telephone.[7]  Rector Dec., ¶ 9.

21  \\\\\

22

23     [6]  Although Mr. Rector avers that Mr. Dangler resigned on August 3, 2004, the California
    State Bar printout for Mr. Dangler's current status attached to the Rector Declaration, indicates that
24  the date of resignation was, a month later, on September 3, 2004.

25     [7]  The one occasion on which petitioner's counsel has been able to meet with his client, in
    December of 2004, obviously occurred after the filing of the state supreme court habeas petition (in
26  October, 2004).

Finding that respondent had raised a salient point (Reply, p. 7) when contending that petitioner should be required to lodge the letters Mr. Rector declared that petitioner wrote in the period of time from February, 2004, until June, 2004, this court, by <u>Order</u>, filed on August 3, 2007, directed that the letters be submitted for in camera review.  Petitioner's counsel has responded by submitting letters written to Mr. Dangler from petitioner that were dated February 29, 2004; April 6, 2004; April 18, 2004; May 9, 2004, June 13, 2004.[8]  He also submitted three other letters from petitioner, two addressed to Mr. Rector, dated June 17, 2004, and September 7, 2004, and one addressed to Mr. Johnson, also of Rector & Tosner, LLP, who appeared at the hearing on this motion, dated August 31, 2004.  The court has reviewed those letters.

Based on the correspondence from petitioner in the period from February to June of 2004, it is evident to the undersigned that within approximately three months of the superior court's denial, petitioner was seeking, inter alia, to know the status of his state supreme court petition and, diligently, if politely, to move the process along.  As evidenced from the letters, petitioner's counsel is correct that petitioner was an active participant in his case, raising issues and evidence he suggested should be considered/included in the state supreme court petition. Petitioner expresses concern about the passage of time since the date of the lower court decision and is specific about the amount of time that has passed and about how long Mr. Dangler has been in possession of court records without a state supreme court petition having been filed.

Respondent's contention that petitioner should be required to lodge the retainer agreement petitioner had with Mr. Dangler for him (Dangler) to pursue petitioner's state court habeas petitions through the state supreme court is less persuasive than the argument for the letters to be lodged.  Reply, p. 7.  All parties concede that Mr. Dangler filed the initial state court habeas petition, and that he did so before the AEDPA statute had run.  Further, the letter attached

_____

[8]  In his declaration, Mr. Rector apparently misdated two of the five letters identified: the submitted June 18, 2004 letter, having been identified as dated June 8, 2004, and the submitted June 13, 2004, letter as dated June 31, 2004.  Rector Dec., ¶ 8.

1    to the Rector declaration, dated June 11, 2004, to petitioner from Mr. Dangler, wherein Mr.

2    Dangler references the as-yet unfiled state supreme court petition and makes clear that he will not

3    be able to perform duties to complete the case due to his retirement and resignation from the

4    practice of law, as a result of health problems.   Opp., Rector Dec., letter attachment.   The

5    statements Mr. Dangler makes in the letter, seeking petitioner's consent to a substitution of

6    counsel, make clear that he has not yet fulfilled his obligation to petitioner: "Due to my health

7    and retirement, Mr. Rector has volunteered to take over the completion of your case. This will

8    cost you nothing other than the fee you have already paid or the balance on your existing

9    account." Id. (Emphasis in original).   "I will soon no longer be an attorney and unable to

10   complete the case." Id.  The statement of consent that petitioner was to sign (and did) was set

11   forth by Mr. Dangler as: "I agree and approve Mr. Rector completing my case." Id.  In light of

12   Dangler's June 11, 2004, letter to petitioner, no serious question is raised based on the absence of

13   a lodged retainer agreement or contract between Mr. Dangler and petitioner as to whether or not

14   Mr. Dangler was under a contractual obligation to file a state supreme court habeas petition on

15   petitioner's behalf.

16          Nor is there any question that Mr. Dangler was very likely to have been so

17   preoccupied by concerns with his health and with a California State Bar investigation that

18   petitioner was, to a large degree, abandoned by his counsel in the immediate months following

19   the November 21, 2003, denial of his state superior court habeas petition, at least early 2004,

20   until mid to late June, 2004 (petitioner signed the consent form on June 17, 2004, and mailed it

21   back).   Mr. Dangler's situation appears to have been something more than the ordinary attorney

22   negligence or heavy workload that respondent correctly argues has not been found to constitute

23   the requisite extraordinary circumstance.  See Reply, pp. 3-4, citing Frye v. Hickman, 273 F.3d

24   1144, 1146 (9th Cir. 2001) (counsel's miscalculation of time limitations and negligence in general

25   do not warrant equitable tolling) and  Lookingbill v. Cockrell, 293 F.3d 256, 264 (5th Cir. 2002)

26   (no equitable tolling because habeas counsel was "overburdened by a busy docket.")  In citing,

1   however, <u>Modrowski v. Mote</u>, 322 F.3d 965, 968 (7th Cir, 2003), for the proposition that attorney

2   incapacity, like attorney negligence, is not a proper ground for equitable tolling, respondent

3   neglects to note that the Seventh Circuit therein observes that it has not yet decided whether the

4   limitation period for § 2254 petitions is *ever* subject to equitable tolling.  <u>Id</u>., at 967, n. 2

5   (emphasis added).  The circuit by which this court is bound has, nevertheless, as noted above,

6   found the statute of limitations could be equitably tolled in the case of extraordinary

7   circumstances beyond a prisoner's control making it impossible to file the petition on time.

8   <u>Calderon v. Beeler</u>, <u>supra</u>, 128 F.3d at 1288.   This appears to be a case, "'[w]hen external forces,

9   rather than a petitioner's lack of diligence, account for the failure to file a timely claim....'" for

10  which "'equitable tolling may be appropriate.'"  <u>Lott v. Mueller</u>, <u>supra</u>, 304 F.3d at 922 (9th Cir.

11  2002), quoting <u>Miles v. Prunty</u>, <u>supra</u>, 187 F.3d at 1107.

12          The details of this case in significant respects are arguably more egregious than

13  the circumstances in <u>Beeler</u>, noted earlier, where Beeler's lead counsel was found to have

14  diligently pursued preparation of the petition but withdrew from the case moving to another state

15  and leaving behind largely unuseable work product for replacement counsel, circumstances over

16  which the Ninth Circuit found petitioner could have had no control.  <u>Beeler</u>, <u>supra</u>, at 1289.  In

17  this case, there is evidence that petitioner was not only reasonably relying on the attorney who

18  had previously submitted his initial petition, but was diligent in his efforts to see that Mr.

19  Dangler filed the next petition.  What intervened appears to have been circumstances beyond the

20  control not only of petitioner, but also, at least in the relevant short term, of his counsel, subject

21  as he evidently was to both ill health and a disciplinary investigation, precluding, or at least

22  severely hampering, timely filing of the state supreme court petition.

23          Respondent seeks to distinguish the instant case from that of <u>Spitsyn v. Moore</u>,

24  <u>supra</u>, 345 F.3d 796.  Reply, pp. 5-6.  In <u>Spitsyn</u>, the Ninth Circuit found that the attorney's

25  misconduct "was sufficiently egregious to justify equitable tolling of the one-year limitations

26  period under AEDPA."  <u>Id</u>., <u>supra</u>, at 801.  In that case, counsel had been hired shortly after

1  Spitsyn's conviction became final, almost a whole year before the AEDPA deadline, but had

2  failed completely to prepare and file a petition.  Seeking action, Spitsyn and his mother had

3  written and called the attorney a number times to no avail.  In addition, Spitsyn and his mother

4  contacted the Washington State Bar with their grievances.  Upon Spitsyn's informing the

5  attorney by mail that he was terminated and asking him to return his file, the deadline passed

6  with no filing on Spitsyn's behalf; about two weeks after the AEDPA deadline passed, the

7  attorney returned the payment that had been made to him and expressed regret for not following

8  through.  The file was not returned for another two months, following commencement of a

9  disciplinary investigation by the bar, after which the attorney was reprimanded by the

10  Washington State Bar.   Ultimately, Spitsyn filed his federal habeas petition some 226 days after

11  the AEDPA statute of limitations had run.  Id., at 798-799.

12        Respondent notes that in this case, attorney Dangler had filed the first petition and

13  that there is no evidence he ignored requests to return the file.  Reply, p. 5.  Respondent argues

14  that while petitioner herein wrote letters to his counsel, Spitsyn and his mother were more

15  diligent for their efforts made prior to the filing deadline, whereas petitioner's first letter was

16  dated February 29, 2004, after the expiration of the deadline on February 26, 2004.  However,

17  respondent fails to note that the February 26, 2004 deadline is strictly applicable in light of a

18  case, Evans v. Chavis, supra, 546 U.S. 189, 126 S. Ct. 846, decided in 2006.

19        Under Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), the statute of

20  limitations is tolled under 28 U.S.C. § 2254(d)(2) during the time properly filed state post-

21  conviction proceedings are pending, and that tolling applies from the time the first state habeas

22  petition is filed until the California Supreme Court rejects the petitioner's final collateral

23  challenge.  As to the time at issue, the Ninth Circuit had held in Saffold v. Carey, 312 F.3d 1031

24  (9th Cir. 2002), as amended on denial of rehearing (Jan. 14, 2003), that a 4 ½ month interval did

25  not constitute unreasonable delay.  Thus, February 29, 2004, a little more than three months after

26  the November 21, 2003, denial, was not, at the time, an unreasonable time and does not

13

1    demonstrate that petitioner has not met his burden to show his entitlement to equitable (although

2    not statutory) tolling by his diligence in corresponding on and after that date until the time that

3    his new counsel came into the case and commenced investigation and preparation in order to file

4    a petition that was filed three and a half months later.

5            Moreover, petitioner herein arguably more reasonably relied on an attorney who

6    had in fact fulfilled his responsibility to file the initial petition.  On the face of it, petitioner may

7    have been blind-sided by the letter he did not receive until June, 2004, from his former counsel,

8    indicating that he could not go forward in this case (or any other).  Even then, although Mr.

9    Dangler references his health issues, he does not mention the bar investigation to which he was

10   subject; if petitioner had had prior knowledge about either of these impediments to counsel's

11   ability to perform his obligations, petitioner might well have been able to take the steps necessary

12   to make a timely filing.

13           Respondent argues that the petition filed in the state supreme court added only

14   two new claims, and minor modifications to one argument section, which should have all been

15   apparent from the trial record, thus, the period of time (more than three months, less than four)

16   between the substitution of new counsel (mid to late June, 2004), and the filing of the state

17   supreme court petition (October 7, 2004), should not be equitably tolled.   (Reply, pp. 6-7).  What

18   respondent's analysis of what may be a less-than-dramatic difference between the two state court

19   habeas petitions does not account for the time new counsel reasonably might need to review the

20   record, investigate any other issues and evidence, complete research and reach a conclusion that

21   the prior petition only required limited modification.

22           This court finds that, while it is a close case, petitioner, under the controlling

23   authority, has met his burden to show that extraordinary circumstances beyond his control, rather

24   than any lack of diligence on his part, made it impossible for him to file his petition timely, and

25   that petitioner is entitled to equitable tolling for the ten-month interval between the denial of his

26   lower state court denial and the filing of his petition in the state supreme court, which would

1  render the instant petition timely filed.  Calderon v. U.S. District Court (Beeler), supra, 128 F.3d

2  at 1288; Lott v. Mueller, supra, 304 F.3d at 922; Spitsyn v. Moore, supra, 345 F.3d 796.

3         Accordingly, IT IS ORDERED that the letters from petitioner to counsel from

4  February 2004 through September 2004, submitted for *in camera review* and stamped "received

5  August 8, 2007," be placed *under seal*.

6         IT IS HEREBY RECOMMENDED that respondent's October 6, 2006, motion to

7  dismiss the petition as barred by the AEDPA one-year statute of limitations be denied.

8         These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10  days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13  shall be served and filed within ten days after service of the objections.  The parties are advised

14  that failure to file objections within the specified time may waive the right to appeal the District

15  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16  DATED: 8/16/07

         /s/ Gregory G. Hollows

17  _____

18         GREGORY G. HOLLOWS
         UNITED STATES MAGISTRATE JUDGE

19  GGH:009
    kers1430.mtd

20

21

22

23

24

25

26