1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10                              **SACRAMENTO DIVISION**

11

12  MICHAEL UPTON KERSHAW,            )      Case No.  2:06-CV-01430-MMS
                                      )
13                    Petitioner,     )      ORDER DENYING PETITION FOR A
    v.                                )      WRIT OF HABEAS CORPUS
14                                    )
    MIKE EVANS,                       )
15                                    )
                      Respondents.    )
16  _____  )

17          Before the court is Michael Upton Kershaw's petition for a writ of habeas

18  corpus filed pursuant to 28 U.S.C. § 2254.  A jury found Kershaw guilty of three

19  counts of nonforcible child molestation.  The jury also sustained a recidivist

20  allegation based on Kershaw's 1996 conviction for forcible child molestation.  The

21  state court sentenced Kershaw to state prison for an aggregate term of 105 years to

22  life.

23                              **FACTUAL BACKGROUND**

24          This court presumes state court findings of fact to be correct unless rebutted

25  by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The following facts are

26  taken from the unpublished opinion of the California Court of Appeal, Third

27  Appellate District:

28          In May 1999, the victim [Holly Swett] (born July 1985) and her

friend [Kerrie Vigrass] (born August 1985) made plans by phone to rendezvous with the latter's boyfriend [Blake Robinson] (the 15 year old cousin of the defendant) at the defendant's apartment. The victim had previously dated the cousin as well. The victim spoke with the defendant in the course of the conversation; he happened to mention that he had served a jail term and was 24. The victim lied to her mother about her destination; the friend's mother knew where she was going. The two girls met the defendant and his cousin at the mall, then the group walked to his apartment.

As the defendant and the teenagers sat in the living room, his mother and her companion emerged from one of the bedrooms and asked if the girls were there with their mothers' permission. The victim answered affirmatively. The older couple returned to their bedroom. Wanting a better "buzz" than the beer in the apartment provided, the quartet left to obtain stronger libations, which the defendant purchased for them with money they provided. Back at the apartment, the victim had five shots of vodka; she testified she was not "big-time" inebriated as a result. While they drank, the victim told the defendant she was either 13 (her testimony) or 14 (her friend's testimony).

The foursome retired to the defendant's bedroom, where they briefly played "Truth or Dare." As the cousin and the victim's friend wanted to be alone, the defendant and the victim went into the living room, closing the door to the bedroom behind them. At least an hour passed before the couple in the bedroom rejoined the others.

After the victim and the defendant exchanged several kisses, they lay on the sofa watching television. The defendant's mother and her companion emerged from their bedroom and left the apartment. After a while, the defendant asked if the victim was interested in sexual activity with him. She declined. Some time later, he repeated the question, and she again declined. This time, he nonetheless slid off her bikini bottom, spread her legs, and began to copulate her vagina orally [which served as the basis for Count 1], followed by digital penetrations [which served as the basis for Count 2]. She did not protest; "[i]t was kind of like a mutual thing." He stopped. She pulled up her bathing suit. He asked if she would engage in further sexual activity with him. She declined. After a few minutes, they rejoined the couple in the bedroom (according to the victim; her friend did not testify to this interruption). The defendant and the victim then returned to the living room. While he touted the advantages of a 24-year-old sexual partner, the defendant removed her bikini bottom again. Stripping off his pants, he began to have intercourse with the victim. [The intercourse served as the basis for Count 3]. After a moment or two, she decided she could not participate any longer. She pushed the defendant away and pulled on her clothes.

The other couple now emerged from the bedroom. The three teenagers were getting tired. According to the victim, the girls walked to the store with the defendant for some cigarettes and snacks. After they got back to the apartment, the defendant's mother and her companion returned. The girls shared a cigarette outside, then the teens all went to

2

sleep in the defendant's bedroom while he slept on the couch. According to her friend, before smoking outside, the victim mentioned to her while they were in the kitchen that she had engaged in sexual activity with the defendant. She did not appear upset. The defendant's mother and her boyfriend [left] the apartment when the girls came back inside, and did not return before the victim fell asleep.

The next morning, the defendant drove the girls back to their neighborhood. The victim reported the incident to her aunt. About two weeks later, the victim gave a statement to the authorities after her mother notified them. About a week after the defendant's arrest, his cousin threatened the victim, telling her a group of girls would be assaulting her. This never happened, and the cousin later apologized to the victim's mother for the threat.

The defendant testified, admitting two prior convictions for sexual offenses with young girls. He was familiar with the victim's friend but had never seen the victim before the two girls appeared at the apartment uninvited to see his cousin. The girls were visibly inebriated. He saw a liquor bottle in one of their backpacks. After 5-10 minutes, the defendant left. He was upset because the girls' presence was a violation of his parole conditions. He came home after an hour. Everyone was watching a movie on television. The defendant thought he detected a peculiar smell in the rear of the apartment, which may have been marijuana. After the movie ended, his cousin disappeared into the bedroom with his girlfriend for about a half-hour. The defendant's mother remained with him and the victim in the living room. When the couple returned from the bedroom, the victim asked to talk to the cousin in the bedroom. They, too, were gone about a half-hour before returning. After the teens retired to his bedroom to go to sleep, the defendant remained awake in the living room until the early hours of the morning. His mother and her companion intermittently checked in on him.

According to the defendant's cousin, the girls phoned him that day to tell him they were coming over uninvited. The cousin, the defendant's mother, and the mother's companion all essentially corroborated the defendant's account. All denied supplying any liquor or marijuana that night. The defendant's mother noted she removed a liquor bottle from one of the girls' backpacks to replace the contents with water.

The defendant's female cousin (sister to the other cousin) had met the victim previously through a mutual friend. She testified she was riding in a car with the victim, the victim's mother and sister, and another passenger in September 1999. Someone asked the victim if anything had happened between the victim and the defendant. The victim said to "tell the lawyer nothing happened." The female cousin admitted she was no longer friendly with the victim, but had simply stayed in contact with her to find out more information for the case.

People v. Kershaw, No. C036297, 2002 WL 27168, at *1-2 (Cal. Ct. App. January

1  10, 2002).

2  **PROCEDURAL BACKGROUND**

3     Kershaw was convicted by a jury on February 15, 2000 of three counts of

4  lewd and lascivious acts on a child under fourteen, in violation of California Penal

5  Code § 288(a).  The jury also found that the allegation of a prior conviction for

6  forcible child molestation, see Cal. Penal Code § 288(b), was true.  The state court

7  sentenced Kershaw to an aggregate state prison term of 105 years to life.  It

8  imposed a sentence of 50 years to life for each count (25 years to life for each

9  count, Cal. Penal Code § 667.71, doubled to 50 years to life under California's

10  Three Strikes Law, California Penal Code § 667(e)).  The court stayed the

11  execution of count two because the court found that counts one (oral copulation)

12  and two (digital penetration) constituted only one incident.  It also imposed a

13  consecutive five-year enhancement pursuant to California Penal Code § 667(a) for

14  the jury's finding that Kershaw was a habitual sex offender.

15     On August 14, 2000, Kershaw filed a timely notice of appeal with the

16  California Court of Appeal.  The state appellate court affirmed the judgment.

17  Kershaw, 2002 WL 27168, at *7.  On February 19, 2002, Kershaw filed a petition

18  for review with the California Supreme Court.  The California Supreme Court

19  denied this petition on March 27, 2002.

20     On March 19, 2003, Kershaw filed a habeas corpus petition in state court.

21  The state court dismissed all of Kershaw's claims.  It first held an evidentiary

22  hearing on the issue of whether Kershaw was aware of his maximum sentence

23  exposure during the plea bargaining process.  At the conclusion of the hearing, the

24  court denied the claim, and dismissed the petition.  A petition for habeas corpus

25  was later filed in the California Supreme Court.  This petition was also denied.

26     After exhausting his state court remedies, Kershaw filed the current federal

27

28                                        4

1  habeas petition.  He alleges the following: (1) ineffective assistance of counsel; (2)

2  that admission of certain evidence violated his due process rights; and (3) that the

3  trial court failed in its duty to explain legal issues in response to a specific jury

4  inquiry.

5        The writ of habeas corpus is available to "a person in custody pursuant to a

6  judgment of a State court only on the ground that he is in custody in violation of

7  the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  As

8  dictated by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a

9  district court's standard of review is as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## DISCUSSION

### I.    Ineffective Assistance of Counsel Claims

Several of Kershaw's claims relate to ineffective assistance of counsel.

Specifically, Kershaw alleges that his trial counsel was ineffective because: (1)

trial counsel failed to properly advise Kershaw of the possible penal consequences

of proceeding to trial rather than accepting a plea bargain; (2) trial counsel failed to

present certain evidence; (3) trial counsel failed to locate and present a witness;

and (4) trial counsel failed to effectively cross-examine a witness.  Kershaw further

claims that the cumulative effect of trial counsel's errors constituted ineffective

assistance of counsel.

1

**A.     Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  To prevail, a petitioner must establish (1) that counsel's performance was so deficient that it fell below an "objective standard of reasonableness" under prevailing professional norms, <u>id.</u> at 687-88, and (2) that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors, <u>id.</u> at 694.

This analysis applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985); <u>see also</u> <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1052 (9th Cir. 2003).  In the plea context, counsel's performance is deficient when his or her advice to the defendant was so incorrect and so insufficient that it undermined the defendant's ability to make an intelligent decision about whether to accept the offer.  <u>Turner v. Calderon</u>, 281 F.3d 851, 880 (9th Cir. 2002) (internal citation omitted).  In order to show prejudice, a habeas petitioner contending that counsel's deficient performance caused him to reject a plea offer must demonstrate a reasonable probability that he would have accepted the plea offer and would not have insisted on proceeding to trial if had he been properly advised.  <u>Nunes</u>, 350 F.3d at 1054; <u>Turner</u>, 281 F.3d at 879.

**B.     Analysis**

**1.     Advising of possible penal consequences**.

Before proceeding to trial, the prosecution offered Kershaw a plea bargain for a term of sixteen years.  Kershaw notified his attorney that he would only accept a plea agreement of twelve years.  No plea agreement was reached.

1  Kershaw claims that "trial counsel incorrectly informed him that he would only

2  receive 15 years to life if convicted at trial and would only serve at the most 15

3  years." He further claims that if he had been properly advised of his maximum

4  exposure, he would have accepted the plea bargain of sixteen years.

5          Kershaw raised this claim in his habeas petition before the California

6  Superior Court. Following an evidentiary hearing, the Superior Court denied this

7  claim on the merits. This claim was also raised in the habeas petition to the

8  California Supreme Court, where it was denied without opinion. Because the

9  California Supreme Court issued a summary denial, this court looks through that

10 decision to the last reasoned decision of the California Superior Court, see Ylst v.

11 Nunnemaker, 501 U.S. 797, 801-06 (1991), which held that the preponderance of

12 the evidence supported that Kershaw knew of his maximum exposure. The state

13 court's factual findings are entitled to deference under 28 U.S.C. § 2254(e)(1),

14 which provides that "a determination of a factual issue made by a State court shall

15 be presumed to be correct. The applicant shall have the burden of rebutting the

16 presumption of correctness by clear and convincing evidence."

17         During the state habeas court's evidentiary hearing, there was extensive

18 testimony by three attorneys, Amy Rogers, James Warden, and Dan Davis, all of

19 whom represented Kershaw in some capacity during the proceedings against him.

20 The attorney who served as Kershaw's trial counsel for the evidentiary portion of

21 trial, Lloyd Riley, had died by the time the evidentiary hearing was held. Kershaw

22 also testified on his own behalf at the evidentiary hearing.

23         Each of the attorneys testified that they advised Kershaw that he was facing

24 life in prison. Rogers testified that she would have advised Kershaw that the odds

25 would be "substantially good" that he would be serving a life sentence for the

26 charges that were brought against him. Warden testified that he thought fifteen

27

28                                         7

1  years to life would be the likely sentence in Kershaw's case.  Warden further

2  testified that he very clearly explained to Kershaw that fifteen years to life could

3  mean life imprisonment and that Kershaw could spend the rest of his life in

4  confinement.  Davis, who was retained after Kershaw was convicted, testified that

5  Kershaw said he was facing a sentence of fifteen years to life.

6  In contrast, Kershaw testified that he was told that he would only serve a

7  maximum of fifteen years.  Although he acknowledged that he was told he was

8  facing fifteen years to life, he testified that Warden told him that he would serve

9  only fifteen years, and that Riley told him that he would serve "between the eight

10  and twelve range – years.  No life."

11  After the evidentiary hearing, the state habeas court rejected Kershaw's

12  claim.  The trial court did not find Kershaw's testimony credible.  It did not credit

13  Kershaw's testimony that none of his attorneys ever told him that he would receive

14  a sentence of more than fifteen years.  It found that Kershaw's testimony was

15  directly contradicted by Warden's testimony.  Further, it found that Kershaw's

16  testimony was contradicted by Rogers's testimony that her general practice is to sit

17  down and give a defendant a copy of the complaint and discuss each count that the

18  defendant is charged with having committed.  The trial court also found that the

19  preponderance of the evidence supported a finding that there was a complaint filed

20  at the beginning of Kershaw's case that charged him with multiple life exposures

21  on multiple counts and that the preponderance of the evidence supported a finding

22  that Rogers notified Kershaw of these facts.

23  The trial court made further findings regarding whether Kershaw would

24  have accepted a plea, and concluded that Kershaw would not have accepted any

25  plea agreement.  The trial judge recalled instances in which Kershaw, competently

26  represented by Riley, repeatedly protested Kershaw's innocence and stated that

27

28  8

Kershaw wanted the case to go to trial because Kershaw was innocent.  On the basis of the trial judge's own recollection of Kershaw's case, and its assessment of Kershaw's credibility, the court found that Kershaw's testimony that he wanted to take a plea was false.

The state court's finding that Kershaw was appropriately advised by multiple counsel that he had life exposure on multiple counts is entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).  Kershaw has not presented the requisite "clear and convincing evidence" to overcome this presumption.  Id. Kershaw cannot show that the state court's decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  Id. § 2254(d)(2).

Kershaw's argument that the state court's determination of the facts was unreasonable is unavailing.  Kershaw first argues that Rogers's testimony is irrelevant because it was made before the prosecutor changed the charges from four counts under 288(a) to three charges under 288(b).  Kershaw's argument misses the point.  Regardless of which section of California Penal Code § 288 was charged, California Penal Code § 667.71 is the relevant statute that determined Kershaw's maximum liability.  California Penal Code § 667.71, as it existed at the time Kershaw's offenses were committed, provided that "[a] habitual sex offender is punishable by imprisonment in the state prison for 25 years to life."  This statute existed during the time Rogers served as Kershaw's counsel.  At the September 23, 1999, hearing, while Kershaw was represented by Warden, the prosecution stated on the record that it expected to charge Kershaw's "priors and enhancements." The information filed against Kershaw on October 1, 1999, the same day that the plea offer expired, contained allegations that Kershaw fell within the habitual sex offender statute, California Penal Code § 667.71.  It was not unreasonable for the

1  state court to find that Kershaw's attorneys had advised him that he faced multiple
2  life terms.

3        Moreover, Warden testified that he explained to Kershaw that the odds were
4  "substantially good" that he was facing life imprisonment.  Kershaw himself
5  testified that he was told he was facing "15 *to life*."  The state court found that
6  Kershaw had a fair understanding that he faced multiple life exposures, but that he
7  "may not have wanted to hear that."

8        Kershaw continues to assert what is belied by the record.  Numerous times
9  in his testimony given during the state habeas evidentiary hearing, Kershaw stated
10  that he was told he was facing fifteen to life, but went on to state that he was also
11  told that he would not receive more than fifteen years.  Even in his petition to this
12  court, Kershaw states, "[T]rial counsel incorrectly informed Petitioner that he
13  would only receive 15 years to life if convicted at trial and would only serve at the
14  most 15 years."  Petition at 15.  It was not unreasonable for the state court to
15  determine that Kershaw was adequately told by numerous counsel that he faced
16  fifteen years to life on numerous counts, but that Kershaw chose to take the risk of
17  going to trial.  There is no clear and convincing evidence to rebut the state court's
18  findings that Kershaw was advised that he could get life imprisonment if he
19  proceeded to trial, and therefore the state court did not make an unreasonable
20  determination of the facts.

21        Giving the state court's findings of fact their due deference, the state court's
22  decision was neither contrary to nor an unreasonable application of Supreme Court
23  precedent.  There was no "gross error" on the part of counsel such that the advice
24  Kershaw was given was "so insufficient that it undermined his ability to make an
25  intelligent decision about whether to accept the [plea] offer."  Turner, 281 F.3d at
26  880-81 (citing United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992); McMann v.

27

28                                      10

1  <u>Richardson</u>, 397 U.S. 759, 772 (1970)).  Kershaw was informed that he faced

2  multiple life exposures, which is what he received after a proper jury trial.

3  Additionally, Kershaw cannot establish prejudice because, again, giving the state

4  court's findings of fact their due deference, Kershaw cannot demonstrate a

5  reasonable probability that he would have accepted the plea offer if he was given

6  all the information he claims he lacked.  <u>Turner</u>, 281 F.3d at 879.

7  **2.  Alleged failure to investigate and present evidence.**

8  Kershaw claims that his trial counsel, Riley, provided ineffective assistance

9  by failing to investigate and present evidence that Kershaw's cousin, Blake

10 Robinson, had sexual intercourse with the victim, Holly Swett.  Robinson

11 presented a declaration post-trial stating that he did not "tell the entire truth" about

12 what he witnessed on the day in question.  He declared that he had sexual

13 intercourse with Swett when Kershaw had left the apartment, and that he and Swett

14 had previously dated.  Robinson speculated that the reason Swett told her mother

15 that she had sex with Kershaw, rather than Robinson, was because Swett knew that

16 her mother would be hard on her if she knew that Swett had sexual intercourse

17 with Robinson.  Kershaw claims his trial counsel rendered ineffective assistance by

18 not questioning Robinson regarding these matters.  Kershaw further claims that

19 Robinson's testimony on these matters would have supported Kershaw's defense

20 and negatively affected Swett's credibility.

21 The state appellate court rejected Kershaw's claim because it found that

22 Kershaw's counsel was not ineffective.  Robinson testified as a defense witness,

23 and corroborated the testimony of Kershaw and the defense's other witnesses.

24 Robinson testified that the girls came over uninvited, that Kershaw left the

25 apartment as soon as the girls arrived, and when Kershaw did return, Kershaw and

26 Swett were not alone on the couch as Swett had claimed they were.  The court

27

28                                          11

1    reasoned that because Robinson had a central role in the events of the night in

2    question, even more so than the mother or her companion, it is reasonable to

3    assume that defense counsel wanted to exclude evidence of Robinson's unlawful

4    sexual conduct because any marginal amount of additional impeachment

5    Robinson's testimony would have generated was not worth the detriment to

6    Robinson's credibility.  Kershaw, 2002 WL 27168 at *4-5.

7        The state court's decision was neither contrary to nor an unreasonable

8    application of Supreme Court precedent.  First, it is unclear whether Kershaw's

9    trial counsel, Riley, was told that Robinson had sex with Swett.  Robinson's

10   declaration is unclear on this point.  It does not state that Robinson told Riley that

11   he had sex with Swett that night.  Kershaw does not allege that Riley failed to do a

12   reasonable investigation of Robinson.  During the motion for a new trial presented

13   to the state trial court, Kershaw's defense attorney at the time (Davis) sought to

14   prove that Riley knew about Robinson having had sex with Swett.  David offered

15   Kershaw as a witness to testify that, at some point, he told Riley that Robinson had

16   sex with Swett on the night in question.  Even assuming Kershaw would have

17   provided this self-serving testimony, it would not necessarily have credibly

18   established that Kershaw did indeed relay this information to Riley.

19       Even if trial counsel did know of this information, there was no ineffective

20   assistance.  The record supports the state court's finding that Kershaw's trial

21   counsel engaged in reasonable trial tactics in this case.  Reasonable tactical

22   decisions cannot form the basis of a finding of ineffective assistance.  See

23   Gonzalez v. Knowles, 515 F.3d 1006, 1015 (9th Cir. 2008) (counsel's decision not

24   to call certain witnesses was a reasonable trial tactic and not deficient

25   performance); Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (counsel's

26   decision not to corroborate testimony, although not the best tactic, did not

27

28                                          12

1   constitute deficient performance).  Kershaw's trial counsel had sought to exclude

2   testimony about other sex acts Robinson committed with his then-girlfriend, Kerrie

3   Vigrass, because testimony of other sex acts going on nearby would be prejudicial

4   to Kershaw.  Noting what was discussed during a sidebar conversation, the trial

5   judge remarked that "there was a specific defense objection to testimony about

6   what had gone on between [Kerrie] and Blake in the bedroom because [Kershaw's

7   trial counsel] didn't want the jury feeling bad towards the defendant because

8   [Kerrie] and Blake may have been engaging in various actions in the bedroom."

9        Robinson was one of the only witnesses who was present during the events

10  at issue who testified in support of Kershaw's defense.  He was therefore an

11  important witness whose credibility mattered a great deal.  Trial counsel could

12  reasonably believe that testimony of Robinson's sexual acts with the victim would

13  distract the jury and cause it to look with disfavor on both his client and his key

14  witness, Robinson.  There was a possible cost and no clear advantage to Kershaw

15  in establishing a sexual relationship between Robinson and the victim.  As the state

16  trial judge found, "Mr. Riley did a competent job."

17       Furthermore, Kershaw cannot show any prejudice from the failure to present

18  Robinson's testimony.  First, establishing that Robinson had sex with Swett is not

19  particularly relevant to whether Kershaw had sex with Swett.  Second, Robinson's

20  testimony would have been subject to impeachment because he had given

21  statements before trial to a court-appointed investigator wherein he stated that he

22  and Swett kissed, but did not indicate that he slept with Swett on the night in

23  question.  Finally, it is unlikely that the jury would have believed Robinson.  The

24  jury did not credit his version of the facts, as evidenced by the verdict against

25  Kershaw.  It is also unlikely that the jury would have believed Robinson's

26  testimony that Swett lied to the police and committed perjury to avoid her mother's

27

28                                                    13

anger.  Kershaw thus cannot meet the prejudice requirement necessary to make out a <u>Strickland</u> claim.  There is no reasonable probability that the result of the proceeding would have been different even if testimony was presented that Robinson had sex with Swett on the day in question.  Accordingly, the state court's decision denying this claim was not contrary to nor an unreasonable application of Supreme Court precedent.

### 3.    Alleged failure to locate and present a witness.

Kershaw claims that trial counsel failed to locate and present an alleged witness, Veronica Ishmael (also referred to as Ishmale).  According to Kershaw, Kershaw's trial counsel subpoenaed Ishmael for a date when the trial was not in session.  Kershaw alleges that Ishmael was a passenger in a car when Swett denied having sex with Kershaw and could have heard such a statement.  He further claims that Ishmael's testimony would have substantiated the testimony of Kara Robinson, Kershaw's cousin, and that Ishmael would have been a credible, unbiased witness because she was not related to or acquainted with Kershaw, and she was friendly with Swett.  Kershaw claims this failure to locate and present Ishmael constituted ineffective assistance of counsel.

The state appellate court rejected the claim because there was neither a witness statement nor a declaration from which to discern the substance of Ishmael's testimony.  The state court reasoned that without any evidence, it was reasonable to assume that defense counsel did not provide ineffective assistance by failing to locate and present Ishmael.  <u>Kershaw</u>, 2007 WL 27168, at *5.  The state court's finding that the failure to call Veronica Ishmael did not constitute ineffective assistance of counsel was not contrary to nor an unreasonable application of Supreme Court precedent, nor an unreasonable determination of the facts.  Further, Kershaw has not established that he was prejudiced by his counsel's

14

1  purported failure to investigate.

2      Kershaw still has not presented any statement or declaration in this court to

3  show that Ishmael would have testified that Swett told her that she did not have sex

4  with Kershaw.  Moreover, aside from Kershaw's self-serving affidavit, there is no

5  evidence of record that a subpoena was sent to Ishmael for a date when court was

6  not in session.  The failure to present evidence is fatal to Kershaw's claim.  See

7  Dows v. Woods, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting an ineffectiveness

8  claim based on trial counsel's failure to interview or call an alibi witness where

9  there was no evidence in the record that the witness would have testified favorably

10  for the defense).

11          **4.      Alleged failure to effectively cross-examine a witness.**

12      Kershaw claims that his trial counsel rendered ineffective assistance in

13  failing to effectively cross-examine Swett.  More specifically, Kershaw claims

14  there were certain "inconsistencies" in Swett's testimony that trial counsel failed to

15  discuss with Swett.  For example, Kershaw states that "Ms. Swett testified that they

16  went to the store to get cigarettes, yet Ms. Vigrass testified that she had cigarettes

17  that she had taken from her mom.  Ms. Swett testified that she told [Kershaw] she

18  was thirteen, Ms. Vigrass testified that Ms. Swett told [Kershaw] she was

19  fourteen."  Further, Kershaw asserts that Swett never mentioned being alone with

20  Blake Robinson, but that Vigrass corroborated Blake Robinson's testimony that he

21  and Swett were alone for a period of time.

22      This claim was raised in Kershaw's state habeas petition.  The state court,

23  citing In re Harris, 5 Cal. 4th 813, 829 (1993) (discussing In re Waltreus, 62 Cal.

24  2d 218 (1965)), denied the petition on the basis that the argument had been raised

25  and rejected on direct appeal.  On direct appeal, Kershaw claimed that trial counsel

26  failed to impeach Swett with statements she made to law enforcement officers.

27

28                                        15

The present claim relates to a failure to effectively cross-examine Swett on other inconsistencies of her statements with statements of other witnesses.  This claim was raised in Kershaw's California Supreme Court habeas petition, where it was denied without opinion.  Where there is no state court decision articulating a rationale on the merits of the constitutional violation alleged, the claim is reviewed de novo because "there is no state court decision on [the] issue to which to accord deference."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); see also Menendez v. Terhune, 422 F.3d 1012, 1025-26 (9th Cir. 2005); Nulph v. Cook, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

On the merits of the claim, Kershaw points to "inconsistencies" in Swett's testimony, but they are not inconsistencies within Swett's trial testimony or inconsistencies of trial testimony with prior statements.  Rather, they are inconsistencies with testimony or declarations made by other witnesses, statements that were not necessarily appropriate subjects for cross-examination of Swett.  Kershaw does not allege that counsel failed to bring out testimony from Swett that could have been favorable to Kershaw.  The jury had the duty as fact finder to determine whose testimony was credible, and, ultimately, correct.  There was no deficient performance of counsel, and, in any event, Kershaw can show no prejudice.  Even if the alleged inconsistencies of witnesses had been highlighted by counsel in cross-examining Swett, the inconsistencies were not of great magnitude, relating, for example, as to how many people went out to buy cigarettes, and whether she and Robinson were alone together in Robinson's room.  There is no reasonable probability that highlighting minor differences in the witnesses' testimony would have changed the jury's decision.

**5.     Whether cumulative errors warrant granting petition.**

Kershaw claims that the cumulative effect of trial counsel's errors

1    constituted ineffective assistance and violated his federal constitutional rights.

2    This claim was raised in Kershaw's state habeas petition where it was incorrectly

3    dismissed as having been decided on direct appeal.  It was also then raised before

4    the California Supreme Court in Kershaw's state habeas appeal.

5         Like Kershaw's previous ineffective assistance claim, this claim was

6    presented on direct appeal, but the state court nonetheless dismissed the claim,

7    citing In re Harris.  As with the previous claim, this court has jurisdiction, see Hill,

8    321 F.3d at 789, and reviews de novo, see Pirtle, 313 F.3d at 1167; Menendez, 422

9    F.3d at 1025-26; Nulph, 333 F.3d at 1056-57.

10        "[T]he cumulative effect of multiple errors can violate due process even

11   where no single error rises to the level of a constitutional violation or would

12   independently warrant reversal."  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir.

13   2007) (citing Chambers v. Mississippi, 410 U.S. 284, 290 n.3 (1973)).  A federal

14   court should grant habeas relief if "the combined effect of individually harmless

15   errors render[ed] a criminal defense 'far less persuasive than it might [otherwise]

16   have been.'"  Id. (alteration in original) (quoting Chambers, 410 U.S. at 294).

17   Under the applicable harmless error standard, relief will be granted on a

18   cumulative error claim "only if the error[s] had a 'substantial or injurious effect' on

19   the verdict."  Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)).

20   The cumulative effect of multiple errors is considered harmless "[i]f the evidence

21   of guilt [was] otherwise overwhelming."  Id. at 928.  Kershaw has not

22   demonstrated any deficiencies of counsel, and even assuming there were

23   deficiencies, that they had a "substantial and injurious effect" on the jury's verdict.

24   Therefore, this claim is denied.

25   **II.   Whether the state court's admission of evidence of "other acts" violated
          due process.**

26        Pursuant to California Code of Evidence § 1108, the trial court allowed

27

28                                          17

1  presentation of evidence of Kershaw's commission of two prior sexual offenses,

2  and excluded evidence of three other offenses.  In addition to admitting the records

3  of conviction into evidence as exhibits, the trial court permitted the testimony of

4  the two victims of Kershaw's prior convictions.  Kershaw complains that

5  permitting the evidence of his two prior convictions was an evidentiary error that

6  amounted to a deprivation of due process.  Petition at 31 (citing Estelle v.

7  McGuire, 502 U.S. 62, 67-68 (1991)).

8      In trials for sexual offenses, prior sexual acts may be admissible under

9  California Evidence Code § 1108, provided the safeguards of section 352 are

10 followed.  The California Court of Appeal affirmed the trial court, adequately

11 explaining why two prior sexual offenses were admitted and three others were

12 excluded.  Kershaw, 2002 WL 27168, at *3.  The prior offenses that were admitted

13 were ones that involved circumstances very similar to the crimes charged, and the

14 court therefore determined that the two prior sexual offenses were relevant, and not

15 unduly prejudicial.

16     The U.S. Supreme Court has never held that prior sexual acts are

17 inadmissible under federal law.  See Estelle, 502 U.S. at 75 n.5 (1991).

18 Furthermore, California Evidence Code § 352 provided adequate due process

19 safeguards to protect Kershaw's federal right to a fundamentally fair trial.  Pulley

20 v. Harris, 465 U.S. 37, 41 (1984); see United States v. LeMay, 260 F.3d 1018,

21 1027 (9th Cir. 2001) (upholding constitutionality of a federal rule of evidence that

22 is analogous to California Evidence Code § 1108 so long as the evidence was also

23 subjected to the balancing test of the Federal Rule of Evidence equivalent of

24 California Evidence Code § 352).  Admission of the evidence did not violate

25 Kershaw's constitutional right to due process and the state court's denial of his

26 claim was not contrary to nor an unreasonable application of Supreme Court

27

28                                    18

precedent, nor an unreasonable determination of the facts.

**III.   Whether the state court's denial to clarify a jury instruction warrants granting the petition.**

In instructing the jury, the trial court provided California Criminal Jury Instruction 2.01 regarding the sufficiency of circumstantial evidence.  In relevant part, that instruction provides that "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion." CALJIC No. 2.01.  After the jury retired to deliberate, the jury asked for clarification regarding the portion of the trial judge's instruction that read "cannot be reconciled with any other rational conclusion."  The trial judge informed the jury that "unless otherwise defined, the wording of instructions is to be understood in their common usage meaning.  I am unable to further clarify 'cannot be reconciled with any other rational conclusion.'"  Outside the presence of the jury, the trial judge gave the reason for not attempting to give a more expansive explanation.  The judge told counsel "when the terms are everyday usage meaning, the Court is not inclined to further elaborate on what is or isn't meant by 'reconciled' or is or isn't meant by 'any other rational conclusion.'"

Kershaw's petition argues that the judge's failure to explain the language of the jury instruction rises to the level of a federal constitutional violation, citing Bollenbach v. United States, 326 U.S. 607, 612-13 (1946).  The Supreme Court stated there that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."  Bollenbach is inapposite to Kershaw's case because Bollenbach involved an erroneous instruction, not a disinclination to try to further clarify commonly used words that are part of a correct instruction.  In Weeks v. Angelone, 528 U.S. 225, 231 (2000), the Supreme Court itself distinguished Bollenbach as dealing with an instruction that was "palpably

19

1   erroneous."  In contrast, the jury instruction in Kershaw's case has specifically

2   been upheld as constitutional by the Ninth Circuit.  See Gibson v. Ortiz, 387 F.3d

3   812, 825 (9th Cir. 2004).  Due process did not require further explanation.

4          The inquiry must focus on "whether there is a reasonable likelihood that the

5   jury has applied the challenged instruction in a way that violates the Constitution."

6   Id. (citing Boyde v. California, 494 U.S. 370, 280 (1990)) (internal quotation

7   marks omitted).  There is no reasonable likelihood that the jury applied this

8   instruction in a way that violated the Constitution, because, as the trial court

9   correctly observed, the words at issue in the instruction have a common meaning,

10  and are not legal terms of art.  The jury was fully and accurately instructed, and

11  there were no ambiguities or deficiencies.  Kershaw's challenge that the failure to

12  clarify the phrase "so infected the entire trial that the resulting conviction violated

13  due process" fails.  Weeks, 528 U.S. at 234.

14          PETITION DENIED.

15

16          DATED:          August 12, 2009

17

18                                          /s/ Mary M. Schroeder
                                            MARY M. SCHROEDER,
19                                          United States Circuit Judge
                                            Sitting by designation
20

21

22

23

24

25

26

27

28                                          20